UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | M.J. No. 19- 7194 |
| v. ) | |
| ) | |
| BRIAN BREA and DOUGLAS GRASSO, ) | |
| a/k/"Sonny", ) | |
| ) | |
| Defendants. | |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Paul Mullen, being sworn, state:

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2.      I have been a Special Agent with the FBI for approximately eight years.  I am assigned to the FBI's Boston Division, Bedford New Hampshire R.A., where I have primarily focused on investigating drug and firearm-related crimes.  I have been the affiant on affidavits in support of search warrants and other applications and have spent much of the last eight years investigating gangs and gang-related activity in and around the state of New Hampshire and in Lawrence, Massachusetts.

3.      I have received training in drug, firearms, and gang-based investigations, including the following:  17 weeks of basic training at the FBI Academy in Quantico, Virginia, which included approximately three weeks of training related to organized crime and drug investigations and additional training related to firearms crimes; training on local drug trafficking

techniques and gangs sponsored by local law enforcement agencies; and numerous hours of on the job training as a member of the FBI New Hampshire Safe Streets Gang Task Force. I also regularly review information on drug trafficking and gang investigation trends reported by FBI headquarters.

4.     As an FBI Special Agent, I have participated in investigations relating to the possession, manufacture, distribution and importation of controlled substances such as fentanyl, heroin, cocaine, marijuana, and prescription narcotics such as oxycodone. These investigations were focused on criminal street gangs, especially those in and around the state of New Hampshire. Many of these investigations also had national or international connections, and many required me to work closely, and to share information and intelligence, with members of other law enforcement agencies, including the United States Drug Enforcement Administration ("DEA"), the United States Bureau of Immigration and Customs Enforcement ("ICE"), the New Hampshire State Police, the Massachusetts State Police ("MSP"), the Police Departments of Manchester, New Hampshire, Nashua, New Hampshire, and Portsmouth, New Hampshire, and elsewhere, and the United States Attorney's Office for the District of New Hampshire. I have debriefed, and continue to debrief, defendants, informants, and witnesses who have personal knowledge about drug and firearms trafficking and gang activities in Massachusetts and New Hampshire, nationally, and abroad.

## PURPOSE OF AFFIDAVIT

5.     I make this affidavit in support of a complaint charging that, on or about June 11, 2019, in Lawrence, Massachusetts, BRIAN BREA and  DOUGLAS GRASSO, a/k/a "Sonny," conspired to distribute fentanyl, in violation of 21 U.S.C. § 846. Further, that on the same date

2

and at the same time BRIAN BREA possessed with intent to distribute 40+ grams fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi).

6.      The statements contained in this affidavit are based on my own investigation, and on information provided to me by other law enforcement officers.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that, BRIAN BREA and DOUGLAS GRASSO, a/k/a "Sonny," conspired to distribute fentanyl, in violation of 21 U.S.C. § 846.  Further, that on the same date and at the same time BRIAN BREA possessed with intent to distribute 40+ grams fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi).  It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

7.      On June 11, 2019, a cooperating informant working with the FBI (hereinafter "CI-1") set up a controlled purchase of fifty grams of fentanyl from BRIAN BREA at phone number 781-526-9770.[1]

---

[1] I know CW-1's name and have met with CW-1 on numerous occasions.  CI-1 has a criminal record, which includes numerous offenses such as illegal distribution of and illegal possession of narcotics.  CI-1 has made numerous controlled purchases of drugs which has resulted in the acquisition of evidence consisting of drugs and recordings.  The FBI has paid CI-1 atleast $5,000 for expenses and services. In addition, I know that he has received approximately $1,000 from task force Monies controlled by the New Hampshire State Police.

8.      Prior to the controlled buy, agents searched CI-1 and its car for money or contraband, with negative results, provided CI-1 with a live monitor, and provided CI-1 with a bundle of fake currency intended to appear as though it was $250 in United States currency to make the purchase. CI-1 called BREA at 781-526-9770 and requested to purchase 50 grams of fentanyl.

9.      Agents set up surveillance and followed CI-1's car to Springfield Street in Lawrence at the vicinity of Parker Street. Once there, agents saw 2 males approach and get into the car in which CI-1 was waiting. Surveillance agents saw BREA get into the front seat. GRASSO was observed getting into the backseat of the same vehicle.

10.  By way of the live monitor, agents heard CI-1 ask in substance, Do you have the stuff? CI-1 was told in substance, no, they keep the product separate. Agents then observed CI-1 drive up Springfield Street, take a right, and park in front of 37 Foster Street.

11.      The front seat passenger, BREA, then got out of the vehicle and went into the apartment building at 37 Foster Street. BREA was inside approximately 2 minutes, then left the building while talking on his phone. BREA did not immediately return to the car. Rather, agents watched BREA as he walked down Foster Street toward Springfield Street, turned left, and disappeared from the agents view on Springfield Street.

12.  During this time the back seat passenger, GRASSO, appeared to provide assistance to BREA. Specifically, while BREA was out of the car, the back seat passenger, GRASSO, stayed in the car with CI-1, ensuring that CI-1 waited for BREA to return. While they waited GRASSO confirmed his knowledge of the endeavor, by informing CI-1 that they needed to go

4

get the product.  GRASSO then engaged CI-1 in small talk while they waited for BREA to return.

13.  Approximately ten minutes after BREA disappeared from sight, a tow truck pulled in and parked immediately behind CI-1's car.  When this happened, GRASSO calmly informed CI-1 that they owned the towing company.

14.   After the tow-truck parked, agents observed BREA walked back into view.  As Brea approached, two men who appeared to be of Hispanic descent, got out of the tow truck. Brea, and the two men, then went into the 37 Foster Street apartment building.  After approximately 5 minutes, BREA returned.  He approached CI-1's vehicle and got back into the front seat of the car.  The two men that accompanied BREA into 37 Foster Street did not return to their tow truck.

15.  Agents immediately approached both sides of CI-1's car.  BREA and GRASSO were placed under arrest.  Agents found approximately 50 grams of tan colored loose powder, wrapped in a plastic bag, sitting in the center console of the front seat.  Based upon my training and experience, I believe that the tan powder, which is in a quantity consistent with the amount ordered by CI-1, to contain Fentanyl.

16.  As agents arrested BREA and GRASSO, BREA told GRASSO in essence , that he would take responsibility for the drugs.  Later, during transport, GRASSO claimed that he was present merely to purchase drugs.  GRASSO did not, however, have drugs or money on his person when he was placed in custody.  When BREA was arrested, he did not have additional drugs or money on his person.

5

CONCLUSION

13.  Based on the foregoing, I submit that there is probable cause to believe that, on or about June 11, 2019, in Lawrence, Massachusetts, BRIAN BREA and  DOUGLAS GRASSO, a/k/a "Sonny,"  conspired to distribute fentanyl, in violation of 21 U.S.C. § 846.  Further, that on the same date and at the same time BRIAN BREA possessed with intent to distribute 40+ grams fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi).

I declare that the foregoing is true and correct to the best of my knowledge, information and belief.

Paul Mullen
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 12th day of June, 2019, at Boston, Massachusetts.

Jennifer C. Boal
UNITED STATES MAGISTRATE JUDGE